UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES LEWIS and NICOLE LEWIS, | * |
| Plaintiffs, | * |
| v. | * Civil Action No. 14-cv-10492-IT |
| DIMEO CONSTRUCTION COMPANY et al., | * |
| Defendants. | * |

ORDER

May 27, 2015

TALWANI, D.J.

I. Introduction

This case presents the question of whether a foreign manufacturer who sells products to a U.S.-based corporate subsidiary operating nationwide may be held to have purposefully availed itself of the Massachusetts market despite not directly conducting sales therein. Plaintiffs James and Nicole Lewis bring claims against a foreign manufacturer, Hilti Corporation ("Hilti Corp.") for injuries suffered by James Lewis ("Lewis") when a tool manufactured by Hilti Corp. allegedly malfunctioned. Defendant Dimeo Construction Company also brings cross-claims against Hilti Corp. for contribution and indemnification. Citing its Liechtenstein citizenship and claiming a lack of contact with Massachusetts, Hilti Corp. argues that it cannot be haled into a Massachusetts court to defend against these claims.

As set forth below, travel by Hilti Corp.'s employees to Massachusetts for the purpose of promoting its products and providing training to employees of its U.S.-based subsidiary, as well

as Hilti Corp.'s apparent control over that subsidiary, suffice to establish a prima facie case of personal jurisdiction. Accordingly, Hilti Corp.'s Motion to Dismiss [#38] is DENIED.

II.     Discussion

   A.     Facts

This case involves claims that a Hilti DX460 powder-actuated tool operated by Lewis malfunctioned and caused injury to his hand. See State Court Record, 9-13 at ¶ 7 [#4] [hereinafter Compl.]. Hilti Corp. manufactured the subject tool outside of the United States. See Hilti Corp.'s Answers Pl.'s Jurisdictional Interrogatories, 1-2 [#39-3] [hereinafter Hilti Corp. Interrogatories]. Hilti Corp. sold the tool to Hilti, Inc. on March 16, 2012. See Hilti, Inc.'s Answers Pls.' Jurisdictional Interrogatories, 2 [#39-4] [hereinafter Hilti, Inc.'s Interrogatories]. Hilti, Inc. then sold the tool to Attaches Davestco, Inc.[1] on May 14, 2012. Id. The receipt for this sale shows a delivery address in Amherst, Massachusetts. See Aff. Alan L. Cantor, Ex. 1 [#42] [hereinafter Cantor Aff.]. James Lewis's injury occurred on approximately May 25, 2014, during the course of his employment on a construction jobsite in Amherst, Massachusetts. See Compl. ¶¶ 5-7.

Hilti Corp. is a Liechtenstein-based corporation. Id. ¶ 4. Hilti Corp. does not do business, own an office space or other real property, manufacture products, directly sell products, employ workers, or pay taxes in Massachusetts. See Aff. Hilti Corporation ¶¶ 5-6 [#39-1].

Hilti, Inc. is the sole distributor of Hilti powder-actuated tools in the United States. See Hilti Corp. Interrogatories at 3. Hilti Corp. sells its products to Hilti, Inc., which then offers those products for sale throughout the United States. Id. at 5. Hilti Corp.'s U.S. revenue comes

---

[1] Attaches Davetsco, Inc. is not a defendant in this litigation. Plaintiffs suggest that Attaches Davestco, Inc. is a Canadian corporation operated by Lewis' employer at the time of his injury (Structures Derek International S.A.). The exact role of Attaches Davestco is immaterial to the resolution of the pending motion to dismiss.

2

from Hilti, Inc.; Hilti Corp. does not receive revenue from direct sales to end-users of its products in the United States. Id. at 6.

Hilti, Inc. is based in Tulsa, Oklahoma, but operates in Massachusetts and has filed a "Foreign Corporation Certificate" with the Secretary of the Commonwealth. See Cantor Aff. Exs. 3-4. Hilti, Inc. sells products to five authorized distributors in Massachusetts: Ribco, Ed Harrington, A.C.S., Carr Hardware, and The Home Depot. See Hilti, Inc.'s Interrogatories at 3. Hilti, Inc. also operates two "Hilti Centers" in Massachusetts where purchasers of Hilti products may receive customer service and repairs. See Cantor Aff. at Ex. 5.

A 2013 financial report explains that "The Hilti Group (the Group) comprises the Hilti Corporation and its domestic and foreign subsidiaries." See Cantor Aff., Ex. 2 at 5. Hilti Corp. is described as the "[p]arent company" of these subsidiaries. Id. at 8. Hilti Inc. is identified as a "100% owned consolidated Group compan[y]" and U.S.-based subsidiary. Id. at 8-10. The report further explains that

> [s]ubsidiaries are all entities over which the Group has control. The Group controls an entity when the Group is exposed to, or has rights to, variable returns from its involvement with the entity *and has the ability to affect those returns through its power over the entity*. Subsidiaries are fully consolidated from the date on which control is transferred to the Group.

Id. at 6 (emphasis added).

Although Hilti Corp. does not directly sell products within Massachusetts, it sends Hilti Corp. employees to the Commonwealth for a variety of work-related purposes. From 2004 until James Lewis's May 25, 2012 injury, [2] Hilti Corp. reports the following relevant employee travel to Massachusetts: (1) nine trips for training, (2) forty-three trips for market research and field testing of prototypes, (3) three trips to visit sub-suppliers or potential sub-suppliers, (4) four trips

---

[2] The court does not consider employee travel occurring after the date of James Lewis's alleged injury. See Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005).

3

to visit suppliers or potential suppliers, (5) two trips to give speeches or attend professional conferences, (6) twenty-seven trips to attend Hilti, Inc. management meetings or sales meetings associated with the introduction of new products, and (7) eighty-nine trips for unknown purposes. See Hilti Corporation's Supplemental Answer Pls.' Jurisdictional Interrogatory No. 9, Ex. 1 [#58-1].

  B. Legal Standard

  A party seeking to hale another party into court bears the burden of establishing the court's personal jurisdiction. See, e.g., Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002). In general, where a defendant moves to dismiss for lack of personal jurisdiction, the court uses a "'prima facie' standard" to determine if its exercise of jurisdiction is appropriate. See United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under this test, the court asks whether "the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." See Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992). To satisfy this standard, "[t]he 'plaintiff must go beyond the pleadings'" and support its jurisdictional allegations with "'affirmative proof.'" Id. at 675 (quoting Chlebda v. H.E. Fortna & Bro., Inc., 609 F.2d 1022, 1024 (1st Cir. 1992)); see also Carreras v. PMG Collins, LLC, 660 F.3d 549, 552 (1st Cir. 2011). However, at the motion-to-dismiss stage, the court does not "'act[] as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law.'" Swiss Am. Bank, 274 F.3d at 619 (quoting United Elec. Radio & Mach. Workers of Am. (UE) v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)); see also Carreras, 660 F.3d at 552 ("The court . . must view [a plaintiff's] evidence, together with any evidence proffered by the defendant, in the light most favorable to the plaintiff. . . .").

An exercise of personal jurisdiction over a defendant must comply with both the forum's statutory limitations and the due process requirements of the U.S. Constitution. See, e.g., Boit, 967 F.2d at 675 (quoting U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d 9, 11 (1st Cir. 1990)). The First Circuit has ruled, however, that because the Massachusetts long-arm statute is at least coterminous with the constitutional limits on jurisdiction, see "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 280 N.E.2d 423, 424 (Mass. 1972) ("We see the function of the long arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States."), this court may "sidestep the statutory inquiry and proceed directly to the constitutional analysis," Daynard, 290 F.3d at 52.

"A district court may exercise authority over a defendant by virtue of either general or specific jurisdiction." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). Here, Plaintiffs argue that Hilti Corp. is subject to the court's specific jurisdiction. Specific jurisdiction requires that the defendant have "minimum contacts" with the forum, "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement, 326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted). The court uses a tripartite test to determine whether minimum contacts exist. First, "the litigation [must] result[] from alleged injuries that 'arise out of or relate to'" the defendant's in-forum activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73 (1985) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). Second, there must be "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum . . . thus invoking the benefits and protections of its laws.'" Id. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Third, it must be "'reasonable . . . to require the

5

[defendant] to defend'" a suit in the chosen forum. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980) (quoting Int'l Shoe, 326 U.S. at 317).

    C.    Application

        1.    Relatedness

The first prong of the court's specific-jurisdiction test requires "a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." Mass. Sch. of Law at Andover, 142 F.3d at 34. The First Circuit has described the test for relatedness as being roughly analogous to, although at times more forgiving than, the test for proximate causation in the tort context. See Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 715-16 (1st Cir. 1996). Determination of whether a defendant's contacts with a forum satisfy the relatedness inquiry requires consideration of the nature of a plaintiff's underlying cause of action. See, e.g., Carreras, 660 F.3d at 554; 163 Pleasant St. Corp., 960 F.2d at 1089.

Plaintiffs bring tort claims related to an alleged product defect. Accordingly, the court's inquiry focuses on whether Hilti Corp.'s contacts with Massachusetts relate to the sale or marketing of the product causing Lewis's injury. Here, relatedness is satisfied by Hilti Corp.'s introduction of the product that eventually injured Lewis into the market, together with its efforts to ensure a distribution network for that product in Massachusetts—namely, its provision of training to Hilti, Inc. employees in the Commonwealth and its testing of tool prototypes in the Massachusetts market. See, e.g,, Michelli v. Techtronic Indus., Co., Nos. 11-10503-NMG, 11-10717-FDS, 11-10718-NMG, 2012 WL 6087383, at *9 (D. Mass. Mar. 1, 2013) (finding relatedness in products liability action where a distributor placed the product into the stream of commerce); Tom's of Me. v. Acme-Hardesty Co., 565 F. Supp. 2d 171, 177 (D. Me. 2008)

6

("[T]he claim here at issue arises directly out of Pacific supplying capric acid to Acme that was later sold to Tom's. This provides a basis for finding the necessary relatedness element of specific personal jurisdiction.").[3]

2.  Purposeful Availment

To satisfy the second prong of the test for an exercise of specific jurisdiction, a plaintiff must show that the "defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." Swiss Am. Bank, 274 F.3d at 624. In analyzing whether purposeful availment has been established, a defendant's "contacts [with the forum] must generally be limited to those before and surrounding the accrual of the cause of action." Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005).

In Asahi Metal Indust. v. Superior Ct. of Cal., 480 U.S. 102 (1987), a plurality of the Supreme Court held that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." Id. at 113 (plurality opinion of O'Connor, J.). A later Supreme Court plurality reaffirmed this ruling in J. McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780, 2788 (2011) (plurality opinion of Kennedy, J.) ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.").

Accordingly, in determining whether a foreign manufacturer may be held to have

---

[3] In a products liability action where personal jurisdiction is predicated on introduction of a product into the stream of commerce, the purposeful availment prong of the court's inquiry, rather than the question of relatedness, is most often dispositive. See, e.g., Michelli, 2012 WL 6087383, at *9; Newman v. Euro. Aeronautic Defence & Space Co. EADS N.V., No. 09-10138-DJC, 2011 WL 2413792, at *5 (D. Mass. June 16, 2011); Unicomp, Inc. v. Harcros Pigments, Inc., 994 F. Supp. 24, 26 (D. Me. 1998).

7

purposefully availed itself of a particular forum, the court's inquiry focuses on whether there is any

> [a]dditional conduct of the defendant . . . indicat[ing] an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.

Asahi Metal Indus., 480 U.S. at 112 (plurality opinion of O'Connor, J.); see also J. McIntyre Mach., 131 S. Ct. at 2792 (plurality opinion of Kennedy, J.) (requiring "'something more'" to show purposeful availment, "such as special state-related design, advertising, advice, marketing, or anything else").

It is undisputed that Hilti Corp. does not own property, pay taxes, or directly sell its products in Massachusetts. However, unlike cases involving a third-party distributor over which a foreign corporation has no control, there is evidence suggesting that Hilti Corp. maintains control over Hilti Inc.'s sales network or product pricing. See Cantor Aff., Ex. 2 at 6 ("The Group controls an entity when the Group is exposed to, or has rights to, variable returns from its involvement with the entity and has the ability to affect those returns through its power over the entity."). This element of control distinguishes the instant case from those in which a foreign corporation was merely aware of a subsidiary's distribution network. Compare Michelli, 2012 WL 6087383, at *11 ("Plaintiffs cannot satisfy the 'stream of commerce plus' standard[] without additional evidence that TTI established or controlled the distribution network here."), with Trustees of Bos. Univ. v. Everlight Elec. Co., Ltd., 2013 WL 2367809, at *8 (D. Mass. May 28, 2013) (finding purposeful availment where foreign defendant controlled the Massachusetts distribution network), and Unicomp, Inc. v. Harcros Pigments, Inc., 994 F. Supp. 24, 28 (D. Me. 1998) (holding that "carefully and knowingly choos[ing] distributors located in this region"

satisfied the test for purposeful availment).

While the precise nature of Hilti Corp.'s control over Hilti, Inc. is not clear from the present record, the evidence presented is sufficient to support a prima facie case of personal jurisdiction. Moreover, even beyond this alleged control, Hilti Corp.'s direct contacts with Massachusetts suffice to establish purposeful availment under the prima facie standard. First, Hilti Corp. sends employees to Massachusetts with relative regularity (177 trips from 2004 to 2012) for a variety of work-related purposes. See J. McIntyre Mach., 131 S. Ct. at 2790 (plurality opinion of Kennedy, J.) (considering whether company sent employees to the forum). Second, the specific purposes of this employee travel support a finding of purposeful availment under the factors articulated by the plurality in Asahi. For example, this travel includes forty-three trips to test product prototypes or conduct market research in Massachusetts. See Asahi, 480 U.S. at 112 (plurality opinion of O'Connor, J.) (considering whether the foreign corporation "design[ed] the product for the market in the forum State"). Moreover, the travel includes nine trips to conduct product training and twenty-seven trips to meet with Hilti, Inc. management or to provide support in sales meetings related to the introduction of new products. See id. (considering whether the foreign corporation "establish[ed] channels for providing regular advice to customers in the forum State").

### 3. Reasonableness

A court determines whether an exercise of specific jurisdiction over a defendant is reasonable in light of five gestalt factors: "(1) the defendant's burden in appearing in the court; (2) the forum state's interest in hearing the suit; (3) the plaintiff's convenience and interest in effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all interested states in promoting substantive social

policies." Hasbro, Inc. v. Clue Computing, Inc., 994 F. Supp. 34, 45 (D. Mass. 1997) (citing Burger King Corp., 471 U.S. at 477).

Because "staging a defense in a foreign jurisdiction is almost always inconvenient and/or costly, . . . [the first gestalt] factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). Here, Hilti Corp. has not identified any special burden to litigating in Massachusetts. Moreover, Hilti Corp. frequently sends employees to Massachusetts. Accordingly, it is not evident that Hilti Corp. would be especially burdened by having to defend this suit in the Commonwealth despite its foreign citizenship.

As to the second gestalt factor, the court presumes that Massachusetts has some interest in this case because it involves a personal injury caused by a product that entered Massachusetts's stream of commerce. See Cosme v. Whitin Mach. Works, Inc., 632 N.E.2d 832, 835-36 (Mass. 1994). However, Plaintiffs are New Hampshire citizens. Accordingly, whatever interest Massachusetts may have in ensuring that its own citizens have an effective forum to seek compensation for personal injuries does not apply in this case. This gestalt factor does not significantly favor either party.

In considering the third gestalt factor, "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." Sawtelle v. Farrell, 70 F.3d 1381, 1395 (1st Cir. 1995). Here, Massachusetts is presumably a convenient forum for Plaintiffs, who are New Hampshire citizens. This is particularly so because the personal injury occurred in the Commonwealth. Moreover, given that Plaintiffs are individuals, it is reasonable to presume that litigating in Massachusetts, a neighboring state, is significantly more convenient than litigating in Liechtenstein. Cf. Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 211 (1st Cir.

1994) (finding that relative convenience of Massachusetts as compared to California, given the location of witnesses, was "at best a makeweight").

The fourth gestalt factor relates to the judicial system's interest in obtaining an effective resolution to the claims. The First Circuit has recognized that "[u]sually this factor is a wash." Nowak, 94 F.3d at 718. An interest in avoiding piecemeal litigation or minimizing the need for interpreters and the transportation of evidence, however, may weigh in favor of a particular forum. Id. at 718-19. Here, the injury occurred in Massachusetts, all witnesses presumably speak English, and the other defendants in this case are presumably not subject to Liechtenstein's jurisdiction. Accordingly, insofar as this factor favors either party, it supports hearing this case in Massachusetts so as to avoid the possibility of piecemeal litigation, the need for English to German translation if litigated in Liechtenstein, and the need to transport evidence and witnesses overseas.

The relative interests of Liechtenstein and Massachusetts in "promoting substantive social policies" is the fifth and final gestalt factor. Hasbro, 994 F. Supp. at 45. Neither party identifies any particular social policy of importance to either Massachusetts or Liechtenstein. However, the court presumes that Massachusetts has some interest in ensuring that products sold within its borders are safe for use by consumers. See, e.g., Am. Shooting Sports Council, Inc. v. Att'y General, 711 N.E.2d 899, 904 (Mass. 1999) (recognizing the Attorney General of Massachusetts's interest in "regulat[ing] the sale of products that are unsafe or defective in ways that a purchaser cannot foresee.").

Accordingly, the court finds that consideration of the gestalt factors does not suggest that exercising personal jurisdiction over Hilti Corp. would be unreasonable. See C.W. Downer & Co. v. Bioriginal Food & Science Corp., 771 F.3d 59, 70 (1st Cir 2014) (finding that "the gestalt

11

factors do not overcome the earlier showing" where "[t]he parties have identified few burdens, interests, or inefficiencies that cut strongly in favor or against jurisdiction").

III.     Conclusion

For the foregoing reasons, Hilti Corp.'s Motion to Dismiss [#38] is DENIED.

IT IS SO ORDERED.

May 27, 2015                                                          /s/ Indira Talwani
                                                      United States District Judge