UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JAMES LEWIS and NICOLE LEWIS, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 14-cv-10492-IT |
| | * | |
| DIMEO CONSTRUCTION COMPANY, | * | |
| HILTI, INC., and HILTI CORP., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

February 16, 2017

Presently before the court is Defendant Dimeo Construction Company's ("Dimeo") Motion for Summary Judgment [#93]. As set forth below, disputes as to material facts preclude summary judgment.

I. Background

This diversity action sounding in tort arose from an injury to Plaintiff James Lewis from an allegedly-malfunctioning Hilti DX 460 powder-actuated tool. Dimeo's Proposed Statement of Facts ¶ 5 [#95] [hereinafter "Dimeo's Facts"]. At the time of the incident, James Lewis worked as an ironworker for Structures Derek, Inc. ("SDI"), a subcontractor on a construction project at the University of Massachusetts, Amherst. Dimeo's Facts ¶ 6.

Plaintiffs commenced a state-court action against Defendants Hilti Corp., the tool's manufacturer, Hilti, Inc., the distributor, and Dimeo, the general contractor on the project. See Summons & Complaint [#95-1]; Dimeo's Facts ¶¶ 2-4. As against Dimeo, Plaintiffs allege that negligence attendant to, *inter alia*, Dimeo's management of the construction project, injury-prevention protocols, training procedures, and the furnishing of equipment, proximately caused

the physical injuries suffered by James Lewis and the loss of consortium suffered by his wife, Plaintiff Nicole Lewis. See Summons & Complaint [#95-1].

After the state action was removed to this court [#1], Hilti, Inc. cross-claimed against Dimeo for contribution and indemnification [#6], and Dimeo cross-claimed against Hilti, Inc. and Hilti Corp. [#13].

Dimeo now seeks summary judgment of all claims against it. [#93]. The motion is opposed both by Plaintiffs James and Nicole Lewis [#100] and Defendants Hilti, Inc. and Hilti Corp. [#105].

II. Summary Judgment Standard

In resolving a motion for summary judgment, the court takes all properly-supported evidence in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Patco Constr. Co. v. People's United Bank, 684 F.3d 197, 206-07 (1st Cir. 2012) (internal quotation marks and citations omitted).

III. Discussion

The Massachusetts Supreme Judicial Court has discussed at length the standards governing a general contractor's liability for injuries suffered by a subcontractor's employees. Corsetti v. Stone Co., 483 N.E.2d 793, 797-99 (Mass. 1985). If the general contractor "retains the right to control the work in any of its aspects, including the right to initiate and maintain

2

safety measures and programs, [it] must exercise that control with reasonable care for the safety of others, and [it] is liable for damages caused by [its] failure to do so." Id., at 798 ("So far as [the general contractor] . . . *retains control over any part*" of the work, it must "exercise reasonable care . . . .") (emphasis in original).

Thus, even when a general contractor's degree of control falls short of that which would establish agency, the general contractor remains exposed to potential liability for negligence if it exercises any meaningful supervisory control—a situation typified by a general contractor's foreman superintending the project as a whole. Id.; see Dilaveris v. W.T. Rich Co., Inc., 673 N.E.2d 562, 564 (Mass. 1996) (the "critical factor" is whether "the general contractor had any meaningful control, however minimal, over the subcontractor . . . .").

> In such a situation, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself.

Corsetti, 483 N.E.2d. at 798. This fact-based inquiry belongs to the jury, id., unless the record demonstrates the rare occasion where undisputed facts demand that the court declare an absence of said meaningful control. See, e.g., Lopez v. Equity Office Management, LLC., 597 F. Supp. 2d 189, 194 (D. Mass. 2009), citing Kostrzewa v. Suffolk Constr. Co., Inc., 897 N.E.2d 1272, 1274-75 (Mass. App. Ct. 2008) (denying summary judgment to defendant on record demonstrating, *inter alia*, that the general contractor (i) "had a project safety manager on site," (ii) required its superintendent "to conduct routine safety inspections and to address any safety issues," and (iii) was party to a contract with the owner that imposed responsibility for safety on

3

the general contractor).[1]

The undisputed facts do not demonstrate this absence of any meaningful control. Undoubtedly, Dimeo's narrative is that SDI enjoyed substantial independence with regard to the pertinent ironwork. See, e.g., Dimeo's Facts ¶¶ 24-29 (noting that SDI supervised and trained its own employees, that the accident occurred in a "restricted construction zone" accessible only to licensed ironworkers employed by SDI, that it was SDI's choice to use the tool in question, and that SDI's contract obligated it to provide safety training—which SDI undertook along with employment of a full-time safety officer and a third-party safety consultant). But the opposing parties proffer additional evidence from which a jury could find that Dimeo retained at least "minimal" control. See Pls.' Resp. to Proposed Facts ¶¶ 25-38 [#102] (noting Dimeo's control over the safety of subcontractors, the need for subcontractors to obtain permission from Dimeo before using the tool in question, and Dimeo's ability to at least observe, if not access, the roof where the accident occurred); Defs. Hilti, Inc. & Hilti. Corp.'s Resp. to Proposed Facts ¶¶ 25-30 [#107].

Plaintiffs proffer evidence that Dimeo employees (including a safety manager and superintendents) were actively on-site conducting walk-throughs, safety talks, and safety briefings[2] and that SDI employees were subordinate to the Dimeo employees. See Pls.'

---

[1] Courts look to contracts between a subcontractor and a general contractor—see, e.g., Foley v. Rust Intern., 901 F.2d 183, 185 (1st Cir. 1990) (finding evidence of insufficiently-meaningful control in a contract between a general contractor and a subcontractor which entirely absolved the general of safety responsibilities and divested it of any granular control)—and also to contracts between a general contractor and the party employing the entire enterprise. See, e.g., Corsetti, 483 N.E.2d at 796 ("The general contract between [the client] and [the general contractor] provided that Stone, as general contractor, was responsible for initiating, maintaining, and supervising job site safety, and was to comply with all applicable safety regulations.").

[2] James Lewis described at deposition Dimeo employees "poking their heads up looking around just checking things out," in reference to the roof where the accident occurred. See Dep. of

Statement of Material Facts ¶¶ 7, 21-27 [#103] [hereinafter "Plaintiffs' Facts"]. The record includes evidence that Dimeo "confirmed the proper training and experience of the workers on its projects," Dimeo's Facts ¶ 30, including by verifying James Lewis' training, Plaintiffs' Facts ¶ 4, and a Dimeo site safety manager stated his authority "to order a subcontractor to either refrain or continue or alter the work that was being performed." Plaintiffs' Facts ¶ 24 (emphasis added).

The contract executed by Dimeo and the University of Massachusetts, Amherst, further belies argument that the record is devoid of facts from which a jury could infer at least "minimal" control. That contract imposed on Dimeo responsibility for "initiating, maintaining and supervising all safety precautions and programs in connection" with the project, and further elucidated Dimeo's sole responsibility for "safety on the project," including Dimeo's responsibility to "establish and implement a safety program . . . ." Plaintiffs' Facts ¶ 37; Agreement Between Owner and Construction Manager 21, 80 [#101-2]. While Dimeo may also have contracted with subcontractors as to the subcontractors' obligations, see Michael Morgan Declaration ¶ 6, and attachment thereto [#95-10], Dimeo cites no contract provision purporting to delegate or divest Dimeo of its obligations under its contract with the University of Massachusetts, Amherst.

Sufficient disputed facts thus require that a jury try the issue of whether Dimeo retained "control of any part" of the project such that a duty (and potential liability) to the subcontractor's employee arose. See Corsetti, 483 N.E.2d at 798; Kostrzewa, 897 N.E.2d at 1274 ("A general contractor has a duty to its subcontractors' employees if it 'retains the right to control the work in any of its aspects . . .'.") (quoting Corsetti, 483 N.E.2d at 798).

---

James Lewis 193-96 [#95-3].

Dimeo's remaining arguments for summary judgment are of little moment. First, Dimeo argues that expert testimony is necessary to establish any causal link between Dimeo's allegedly negligent supervision and the injury at issue. Courts sitting in diversity import state law to determine the necessity of expert testimony as to an element of a claim. Beaudette v. Louisville Ladder, Inc., 462 F.3d 22, 27 (1st Cir. 2006). Dimeo has not cited—nor has the court found—any Massachusetts case stating or implying that a lay jury cannot determine elements of negligence in a case like this. While expert testimony is sometimes required in, for example, the medical malpractice or product design contexts—see, e.g., Goldberg v. Northeastern University, 805 N.E.2d. 517, 520 (Mass. App. Ct. 2004) (medical malpractice); Peterson v. Massachusetts Port Authority, 2006 WL 3780740, at *2 (Mass. App. Ct. Dec. 26, 2006) (negligent design)—here Dimeo identifies no pertinent issue demanding technical expertise.

Second, Dimeo argues that the record generally contains insufficient facts allowing a jury to find Dimeo caused Plaintiffs' injuries. But this is not the case. By way of example of one viable theory, the record demonstrates that the tool in question had been potentially malfunctioning for days, see Dimeo's Facts ¶¶ 10-11, and a reasonable jury might infer that more stringent reporting requirements or oversight might have led Dimeo to exercise its authority to remove the tool from service. See Plaintiffs' Facts ¶ 33 (demonstrating Dimeo's authority to confiscate the tool). Further, the Kostrzewa court's analysis all but forecloses summary judgment on the record before this court. 897 N.E.2d at 1273-76. There, the Massachusetts Appeals Court reversed an entry of summary judgment in favor of a general contractor in light of the following similar facts: (i) the contract between the general contractor and the owner conferred on the general contractor full responsibility for safety and a duty to initiate and implement safety precautions; (ii) the general contractor had a project safety manager on site, and the general

contractor's own guidelines required routine safety inspections by the general contractor's employees; (iii) the general contractor's inspectors were able and did observe the area of the accident, actual access to which was foreclosed to the general contractor's employees; and (iv) the general contractor did not fully delegate sole responsibility for safety to a subcontractor. Id. at 1274-76. These facts, the court held, sufficed to allow a jury to infer both duty and breach, and thus precluded summary judgment. Id. The result is the same here.

IV. Conclusion

For the foregoing reasons, Dimeo's Motion for Summary Judgment [#93] is DENIED.

Date: February 16, 2017          /s/ Indira Talwani
                                 United States District Judge